UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**CELESTIN DIMA**,

Petitioner,

– against –

**KENNETH GENALO**, Field Office Director of Enforcement and Removal Operations, New York Field Office, Immigration and Customs Enforcement; **DAVID VENTURELLA**, Acting Director, Immigration and Customs Enforcement; **MARKWAYNE MULLIN**, Secretary, U.S. Department of Homeland Security; **TODD BLANCHE**, U.S. Attorney General,

Respondents.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

26-CV-5258 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On July 17, 2026, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") officers arrested and detained the petitioner during a routine ICE appointment at 26 Federal Plaza in New York City. (ECF No. 1 ¶ 18; ECF No. 6-7 ¶ 66.)[1] He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (ECF No. 1 ¶ 1.) The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (*Id.* ¶ 6.) The Court grants the petition, as explained below.

[1] The Court refers to ICE and CBP collectively as the "Department of Homeland Security" or "DHS."

## BACKGROUND[2, 3]

The petitioner, a citizen of Burkina Faso, entered the United States without inspection in July 2024. (*Id.* ¶ 8; ECF No. 6-7 ¶¶ 3–4.) DHS placed him in removal proceedings. (*See* ECF No. 1 ¶¶ 8, 10; ECF No. 6-7 ¶¶ 4–8.)[4] The petitioner, who is gay, applied for asylum, withholding of removal, and relief under the Convention Against Torture, because he feared persecution due to his sexuality. (ECF No. 1 ¶¶ 9–10.) Burkina Faso criminalizes homosexuality, and governmental and nongovernmental actors in Burkina Faso had persecuted and tortured the petitioner because of his sexuality. (*Id.*) Throughout these proceedings, the petitioner was in ICE custody in Arizona. (*Id.* ¶¶ 11, 29; ECF No. 6-7 ¶¶ 9, 61.) He applied for bond five times. (ECF No. 1 ¶ 11.) ICE did not respond to the first two applications and denied the other three applications because the petitioner did not show that he was not a flight risk. (ECF No. 1 ¶ 11; ECF No. 6-7 ¶¶ 13, 16, 19–24, 27–30; ECF No. 1-1 at 1.)

On August 28, 2025, an Immigration Judge ("IJ") denied the petitioner's request for asylum and ordered him removed to Burkina Faso, but withheld his removal. (ECF No. 1 ¶ 12; ECF No. 1-2 at 2–5; ECF No. 6-7 ¶ 35.) ICE then sought to remove him to Ghana, citing "credible" "diplomatic assurances" that the petitioner would not be persecuted or tortured there.

---

[2] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

[3] Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025); *see also* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose of" habeas petitions expeditiously, "as law and justice require").

[4] The petitioner says he entered the United States on July 21, 2024, and DHS detained and placed him in removal proceedings that same day. (ECF No. 1 ¶¶ 8, 10.) The government says that the petitioner entered the country late on July 8, 2024, DHS arrested him about an hour later on July 9, and, on July 21, DHS served him with a warrant and issued a Notice to Appear and a Notice of Custody Determination. (ECF No. 6-7 ¶¶ 4–8.) Neither the petitioner nor the government attaches the warrant or notices.

(ECF No. 1 ¶ 14; ECF No. 6-7 ¶ 38). An asylum officer found that the petitioner had a credible fear of persecution in Ghana, so ICE did not send him there. (ECF No. 1 ¶ 14; ECF No. 6-7 ¶ 40.) The petitioner stayed in ICE custody.

In early December 2025, DHS reopened the petitioner's immigration case. (ECF No. 1 ¶ 14; ECF No. 6-7 ¶ 43.) In January 2026, DHS asked the IJ to designate Cameroon as a country of removal in addition to Ghana. (ECF No. 6-7 ¶ 48.) The petitioner said he was afraid to be removed to Cameroon. (*Id.*) The IJ never made a ruling, and DHS did not renew its effort to send the petitioner to Cameroon. In early March 2025, the IJ issued a decision withholding the petitioner's removal to Ghana and Burkina Faso. (ECF No. 1 ¶ 14; ECF No. 6-7 ¶¶ 54–55.) The Central African Republic ("CAR") then gave DHS "credible" "diplomatic assurances" that the petitioner would not be persecuted or tortured if DHS sent him there. (ECF No. 6-7 ¶ 58.) In May 2025, DHS scheduled his removal to the CAR for the week of July 30, 2026. (*Id.*) In the intervening months, however, a district court in Arizona ordered the petitioner's release under Section 2241. On June 30, 2026, ICE released the petitioner from custody in compliance with that order. (ECF No. 1 ¶ 15; ECF No. 1-4.) At that point, the petitioner had been in custody for almost two years.

After his release, the petitioner went to New York City to live with a cousin. (ECF No. 1 ¶ 16.) DHS issued an order of supervision ("OSUP") requiring the petitioner to report to 26 Federal Plaza on July 17, 2026. (*Id.*; ECF No. 1-5 at 2.) Between June 30 and July 17, the petitioner was at liberty and did not violate the terms of his release. Nevertheless, ICE arrested him when he reported to 26 Federal Plaza on July 17 as directed by the OSUP. (ECF No. 1 ¶ 18; ECF No. 6-7 ¶¶ 65–66.) DHS revoked the petitioner's OSUP because of a "change in circumstances" making it likely that ICE would deport him by October; DHS did not specify

where it would send the petitioner. (ECF No. 1 ¶ 18; ECF No. 1-6; ECF No. 6-7 ¶¶ 62, 67.) ICE did not give the petitioner an opportunity to be heard. (ECF No. 1 ¶ 19; ECF No. 6-7 ¶ 67.)[5] Later that day, ICE transferred him to a detention center in New Jersey. (ECF No. 6-7 ¶ 68.)

That same day, the petitioner filed a habeas petition in the Southern District of New York challenging the revocation of his OSUP, his detention under 8 U.S.C. § 1231, and his removal to a third country without due process. (ECF No. 1 ¶ 20; ECF No. 6-1.) The petitioner amended his petition a few days later, asserting substantially the same claims. (ECF No. 6-2.)

The petitioner did not know where ICE was going to try to send him. He told ICE he was afraid of removal to several countries, including the CAR. (ECF No. 1 ¶ 21.) About a week later, ICE transferred the petitioner to a detention center in Texas. (*Id.*; ECF No. 6-7 ¶ 73.) An IJ stayed the petitioner's removal on July 28, 2026, and, on July 30, 2026, the Southern District of New York granted the petitioner's motion for a temporary restraining order ("TRO") to prevent his removal from the country. (ECF No. 1 ¶ 21; ECF No. 6-7 ¶¶ 74, 77–80; ECF No. 8 at 5; ECF No. 8-2 at 2–3.) Nevertheless, ICE put the petitioner onto a plane bound for the CAR but let him off the plane just before it departed. (ECF No. 1 ¶ 22.) ICE sent the petitioner to a detention center in Pennsylvania, and then to New Jersey. (ECF No. 6-7 ¶¶ 81–82.) Although the petitioner once again told ICE that he was afraid of being sent to the CAR and other African countries, ICE served him with a notice of removal to the CAR on August 9. (ECF No. 1 ¶¶ 23–24; ECF No. 6-7 ¶ 83.) An asylum officer interviewed the petitioner on August 11 and on August 12 issued a decision concluding that the petitioner was likely to be persecuted if removed to the CAR. (ECF No. 1 ¶ 24; ECF No. 1-7 at 2; ECF No. 6-7 ¶ 84.) By August 14, the

[5] ICE confiscated $200 in cash from the petitioner as well as his hat, phone, earphones, mouth spray, his passport, and a necklace. (ECF No. 6-7 ¶ 67; ECF No. 6-11.)

petitioner's Southern District of New York petition was fully briefed. (ECF No. 8 at 5.) On August 17, ICE moved the petitioner to the MDC in Brooklyn. (ECF No. 1 ¶ 30.)

On August 21, an IJ reopened the petitioner's removal proceedings because DHS asked to designate the CAR as the petitioner's country of removal, which the petitioner opposed. (*Id.* ¶¶ 25–26; ECF No. 1-8 at 1–2; ECF No. 6-7 ¶ 85.) It has been over two years since ICE first detained him in July 2024, and the petitioner has never had an individualized custody review. (ECF No. 1 ¶ 27.)[6]

On August 26, the parties stipulated to dismiss the petitioner's Southern District of New York habeas petition, which was pending before Judge John Cronan. (ECF No. 6-3.) In a letter to Judge Cronan, the petitioner explained that he stipulated to dismissal because an IJ reopened his removal proceedings and ICE moved him out of the Southern District. (ECF No. 6-5 at 1.) Because the removal proceedings were reopened, the petitioner was no longer detained based on the revocation of his OSUP, and the statutory basis for his detention shifted from Section 1231 to Section 1226(a). (*Id.* at 2.) If he were to have continued the case in the Southern District, the petitioner would have had to amend his petition to add claims and was concerned that the government would challenge venue because he was now at the MDC in this district. (*Id.* at 1.) Litigating the venue issue would have delayed resolution, which the petitioner did not want, because ICE had already held him for over two years with no bond hearing. (*Id.* at 2.) The petitioner was also concerned that DHS might transfer him out of the Second Circuit, and that he might lose his counsel and the protection of Second Circuit law. (*Id.*) On August 27, Judge Cronan signed the stipulation of dismissal. (ECF No. 6-6 at 2.)

[6] DHS returned the petitioner's money and hat, but his passport, phone, earphones, necklace, and mouth spray are currently lost. (ECF No. 6-7 ¶ 89.)

The previous day, August 26, the petitioner filed this habeas petition, naming all the same parties that he named in his petition before Judge Cronan. (ECF No. 1 at 18.) He claims that from the date that the IJ reopened the removal proceedings, the government has violated his rights under 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment. He seeks release, or, alternatively, a custody hearing. (*Id.* ¶¶ 46–59; *id.* at 17–18.) The Court ordered the government to show cause why the petition should not be granted. (*ECF Order dated Aug. 26, 2026.*)[7] The government filed its opposition to the petition and response to the Court's Order to Show Cause, with exhibits and a declaration by an ICE Acting Supervisory Detention and Deportation Officer, on September 2, 2026. (ECF No. 6; ECF No. 6-7). The petitioner replied on September 8, 2026. (ECF No. 8.)[8]

## LEGAL STANDARD

A district court is empowered "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that the government is currently violating his rights under 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth

[7] The Court also ordered the government not to remove the petitioner from the United States or transfer him out of the Eastern District of New York during the pendency of these proceedings. (*See ECF Order dated Aug. 26, 2026*.)

[8] The Court granted both parties' requests for filing extensions.

Amendment because it never gave him an individualized custody hearing. (ECF No. 1 ¶¶ 46–59.) He requests release, or, alternatively, a custody hearing. (ECF No. 1 ¶ 59; *id.* at 17–18.)

The government concedes that this Court's decisions in *Escalona v. Warden*, No. 26-CV-3920, 2026 WL 2018505 (E.D.N.Y. July 13, 2026), and *Diosa v. Warden*, No. 26-CV-4068, 2026 WL 2056253 (E.D.N.Y. July 16, 2026), and its interpretation of *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), require release under Section 1226(a). (ECF No. 6 at 9–10.)[9] The government argues, however, that the Court should permit it to detain the petitioner and deny the petition as an abuse of the writ, because the petitioner's habeas petition was pending in the Southern District when he filed his petition in this district, and he raises claims here that he could have raised in an amended petition in the Southern District. (ECF No. 6 at 8.)

The petitioner makes multiple arguments in response. (ECF No. 8.) He says that he could not have raised these claims in the Southern District petition because he was detained under Section 1231 when he filed that petition; it was only after the IJ reopened the removal proceedings that he was detained under Section 1226(a), and by that point ICE had sent him to this District. (*Id.* at 8–9.) While he raised due process claims in the Southern District petition, those claims were based on different facts, and in this petition, he is making a Section 1226(a) claim. (*Id.* at 9–10.) Moreover, when the IJ reopened the petitioner's removal case, his claims in the Southern District petition became moot. According to the petitioner, requiring him to seek leave to amend the earlier petition before he filed this petition would violate the Suspension Clause; he would have to request and obtain leave to amend the petition, and could face a venue challenge which would require a response, time-consuming procedural hurdles that would

[9] The government maintains that ICE is detaining the petitioner under Section 1225(b)(2)(A) and need not provide the petitioner with a custody determination, but recognizes that the Court has previously rejected similar arguments. (ECF No. 6 at 10–11.)

unreasonably burden the petitioner's right to habeas relief. (*Id.* at 11–12.) Finally, the petitioner says, the abuse-of-the-writ doctrine does not apply, because his claims in the previous petition were never adjudicated on the merits. Thus, this petition does not result in needless, piecemeal litigation. (*Id.* at 12–13.)

"The 'abuse of the writ' doctrine permits a district court, in its discretion, to dismiss a successive habeas petition that raises claims that . . . could have been raised in the first habeas petition." *Bohorquez v. Mullin*, No. 26-CV-2053, 2026 WL 1693948, at *3 (E.D.N.Y. June 11, 2026) (citing *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)). A petitioner can defeat an abuse claim by showing "cause" for failing to raise claims he could have raised earlier, and "prejudice" from not raising them. *See id.* at *4 (quoting *Roccisano v. Menifee*, 293 F.3d 51, 61 (2d Cir. 2002)). In any event, the failure to raise claims in a prior petition is not a basis for dismissal if the petitioner can show that "'a fundamental miscarriage of justice would result from a failure to entertain the claim[s].'" *See id.* (quoting *Roccisano*, 293 F.3d at 61).

This is such a case. *See Malik v. Brennan*, No. 93-cv-7861, 1995 WL 510047, at *4 (S.D.N.Y. Aug. 29, 1995) (*citing McCleskey*, 499 U.S. at 493, for the proposition that a "fundamental miscarriage of justice" that overrides abuses of the writ occurs when the constitution counsels release from custody). The government concedes that the Court's earlier decisions — *Escalona*, 2026 WL 2018505, and *Diosa*, 2026 WL 2056253 — and its reading of *Cunha*, 175 F.4th 61, require that it release the petitioner immediately. "*Cunha* held that Section 1225(b)(2)(A) applies only to a noncitizen 'seeking admission,' meaning 'a noncitizen who is seeking admission right now, not one who sought admission in the past.'" *Diosa*, 2026 WL 2056253, at *2 (quoting *Escalona*, 2026 WL 2018505, at *3). *Cunha*'s holding "allows noncitizens like Petitioner, who are already present in the United States and are determined not

to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending." *Cunha*, 175 F.4th at 70. Like *Diosa*, the petitioner, who was released in June 2026, is currently detained under 8 U.S.C. § 1226, "and in violation of his rights to due process under the Fifth Amendment of the Constitution." *Diosa*, 2026 WL 2056253, at *3 (citing *Escalona*, 2026 WL 2018505, at *2–4). The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The government must therefore release the petitioner.

While the petitioner could have at one point sought leave to amend the Southern District petition to add the new claims he raises here, he can no longer do so because Judge Cronan dismissed his petition on the parties' stipulation. If the Court were to dismiss this petition, the petitioner would have to file another new petition before he could obtain release. The government might raise another abuse-of-the-writ challenge, further prolonging the petitioner's detention past the more than two years he has already suffered. Applying the abuse-of-the-writ doctrine on these facts would be a "fundamental miscarriage of justice." *See Roccisano*, 293 F.3d at 61. Under these circumstances, in the exercise of its discretion, the Court declines to dismiss the petition as an "abuse of the writ."

The government is directed to release the petitioner from custody immediately and within 24 hours of this Order. The government must return to the petitioner any property that it seized from him. The government is directed to submit a letter to the Court certifying compliance with this Order within 48 hours of this Order.

The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C.

§ 1226(a). This order includes "an injunction barring deprivation of [any] of the [petitioner's] rights without the requisite procedural protections." *Khabazha v. U.S. Immigr. & Customs Enf't*, 25-CV-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y. Nov. 25, 2025) (ordering that the government release the petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return him to the "status quo ante.").

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), is granted. The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 15, 2026